[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 19, 2002
THOMAS K. KAHN
CLERK

No. 01-13831

D. C. Docket No. 01-00415 CV-S-N

MICHAEL SHANE DAVIS,
HEATHER N. DAVIS,

Plaintiffs-Appellees,

versus

SOUTHERN ENERGY HOMES, INC.,
a corporation,

Defendant-Appellant,

BILO HOMES, INC., a corporation,
DAVID L. SMITHERMAN,

Defendants.

Appeal from the United States District Court
for the Middle District of Alabama

**(September 19, 2002)**

Before ANDERSON and DUBINA, Circuit Judges, and MILLS*, District Judge.

---

*Honorable Richard Mills, U.S. District Judge for the Central District of Illinois, sitting by designation.

DUBINA, Circuit Judge:

The important question presented in this appeal is whether the Magnuson-Moss Warranty Act permits or prohibits the enforcement of pre-dispute binding arbitration clauses within written warranties. We hold that the Magnuson-Moss Warranty Act permits binding arbitration and that a written warranty claim arising under the Magnuson-Moss Warranty Act may be subject to a valid pre-dispute binding arbitration agreement.

## I.  BACKGROUND

In October 1999, Michael Shane Davis and Heather N. Davis ("the Davises") purchased a manufactured home constructed by Southern Energy Homes, Inc. ("Southern"). When the Davises purchased the home, they signed a binding arbitration agreement contained within the manufactured home's written warranty. The Davises later discovered multiple defects in the home and notified Southern of the problems. After Southern failed to correct the defects to the Davises' satisfaction, the Davises filed suit in the Circuit Court of Lowndes County, Alabama, asserting claims for breach of express and implied warranties, violations of the Magnuson-Moss Warranty-Trade Commission Act ("MMWA" or "the Act"), negligent and wanton repair, and fraud. Southern removed the case to federal court and, in lieu of an answer, filed a Motion to Dismiss or, in the

Alternative, to Compel Arbitration. The district court, relying on its prior decision in *Yeomans v. Homes of Legend, Inc*, No. 00-D-824-N (M.D. Ala. March 5, 2001), which found that the MMWA prohibits binding arbitration, denied Southern's motion. Southern timely appealed the district court's order denying Southern's Motion to Compel Arbitration.

## II.    ISSUES

(1)    Whether Southern waived its right to appeal the district court's order denying its Motion to Compel Arbitration when Southern conceded that the district court was bound by its prior decision in *Yeomans*.

(2)    Whether the Magnuson-Moss Warranty Act permits or precludes enforcement of binding arbitration agreements with respect to written warranty claims.

## III.    STANDARD OF REVIEW

We review a district court's order denying a motion to compel arbitration *de novo*. *Cunningham v. Fleetwood Homes of Ga., Inc.*, 253 F.3d 611, 614 (11th Cir. 2001) (citing *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1060 (11th Cir. 1998)).

## IV.    DISCUSSION

A.    *Waiver of Right to Appeal*

The Davises contend that Southern waived its right to appeal by acknowledging to the district court that the court was bound by its prior holding in *Yeomans*. We disagree that Southern waived its right to appeal. Southern argued in its initial motion and brief to the district court that *Yeomans* and the cases *Yeomans* relies upon are incorrect. Southern, therefore, maintained its position and did not waive its right to appeal. Thus, we must consider the merits of this appeal.

B.     *The MMWA and Binding Arbitration of Written Warranty Claims*

In this appeal, Southern argues that, based upon the strong federal policy of enforcing valid arbitration agreements under the Federal Arbitration Act ("FAA"), the Davises must submit their written warranty claims to binding arbitration rather than file suit for breach of warranty. To support this argument, Southern notes that the Supreme Court continually enforces binding arbitration agreements of statutory claims, and argues that the MMWA is similar to these other statutes because nothing in the MMWA's text, legislative history, or underlying purposes evinces that Congress intended to preclude binding arbitration of written warranty claims. Southern also asserts that the Federal Trade Commission's ("FTC") regulations and interpretations, which prohibit binding arbitration of MMWA claims, are unreasonable, and thus, we should accord them no deference.

4

The Davises, conversely, assert that arbitration is an improper forum for MMWA claims and that the Act's language, legislative history, and underlying purposes compel a conclusion that dispute settlement procedures cannot be binding under the MMWA. The Davises argue that § 2310(a) of the MMWA, which states that consumers must resort to a warrantor's informal dispute settlement mechanism *before* commencing a civil action, necessarily implies that the decision of any informal settlement procedure may not be binding.  They reason that Congress' use of different terminology to describe the settlement procedures of § 2310(a) throughout the MMWA's text and legislative history, combined with the absence of any statutory definition for the terms, establishes that Congress used the terms "dispute settlement procedures" and "dispute settlement mechanisms" only as generic terms, and thereby included binding arbitration as a type of alternative dispute resolution procedure.  The Davises also argue that this court must defer to the FTC regulations, which reject binding arbitration of written warranty claims arising under the MMWA, because the FTC reasonably interpreted the MMWA in these regulations.

We recognize that state and federal courts are sharply divided on whether the MMWA permits pre-dispute binding arbitration of written warranty claims. *Compare Boyd v. Homes of Legend*, 981 F. Supp. 1423 (M.D. Ala. 1997),

5

*remanded on jurisdictional grounds*, 188 F.3d 1294 (11th Cir. 1999), *Wilson v.*

*Waverlee Homes, Inc.*, 954 F. Supp. 1530 (M.D. Ala. 1997), *Rhode v. E & T Invs.,*

*Inc.*, 6 F. Supp. 2d 1322 (M.D. Ala. 1998), *Pitchford v. Oakwood Mobile Homes,*

*Inc.,* 124 F. Supp. 2d 958 (W.D. Va. 2000), *Parkerson v. Smith*, 817 So. 2d 529

(Miss. 2002), *Browne v. Kline Tysons Imports, Inc.*, 190 F. Supp. 2d 827 (E.D. Va.

2002), *and Borowiec v. Gateway 2000, Inc.*, 772 N.E.2d 256 (Ill. App. 2002), *with*

*Southern Energy Homes, Inc. v. Ard*, 772 So. 2d 1131 (Ala. 2000), *Results*

*Oriented, Inc. v. Crawford,* 538 S.E.2d 73 (Ga. Ct. App. 2000), *aff'd* 548 S.E.2d

342 (Ga. 2001), *In re American Homestar of Lancaster, Inc.*, 50 S.W.3d 480 (Tex.

2001), *and Howell v. Cappaert Manufactured Hous., Inc.*, No. 2002-0165 (La.

App. June 5, 2002). The Fifth Circuit is the only circuit court to directly address

this issue and, in a divided panel decision, it held that the MMWA permits binding

arbitration. *See Walton v. Rose Mobile Homes LLC*, No. 00-60742, __ F.3d __

(5th Cir. 2002).[1] After a thorough review of the MMWA and its legislative history,

the FAA and the Supreme Court's application of the FAA to other federal statutes,

---

[1] In *Cunningham v. Fleetwood Homes of Ga.*, 253 F.3d 611 (11th Cir. 2001), this court discussed binding arbitration of MMWA claims. We declined to resolve the question, however, because it was not necessary to the resolution of that case. 253 F.3d at 623-24 ("We are not required to and do not decide whether Magnuson-Moss makes arbitration agreements unenforceable as to all Magnuson-Moss claims. Nor it is necessary for us to determine whether warrantors may include binding arbitration provisions in the warranty itself.").

we conclude that the MMWA permits the enforcement of valid binding arbitration agreements within written warranties.

### 1. *MMWA*

Congress passed the MMWA in 1975 in response to an increasing number of consumer complaints regarding the inadequacy of warranties on consumer goods. *See* H.R. Rep. No. 93-1107 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7702, 7705-11. The purpose of the MMWA is "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products . . . ." 15 U.S.C. § 2302(a) (1994). In order to advance these goals, § 2310(d) of the MMWA provides a statutory private right of action to consumers "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract . . . ." *Id.* § 2310(d)(1). Consumers may sue for a MMWA violation in either state or federal court. *Id.*

In order to encourage settlements by means other than civil lawsuits, § 2310(a) allows a warrantor to include a provision for an informal dispute settlement mechanism in a warranty. *Id.* § 2310(a)(3); *see also* H.R. Rep. No. 93-1107 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7702, 7722 ("Congress declares it to be its policy to encourage warrantors to establish procedures whereby consumer

7

disputes are fairly and expeditiously settled through informal dispute settlement mechanisms."). Although the MMWA does not define "informal dispute settlement procedure," it does provide that if a warrantor incorporates a § 2310(a) informal dispute settlement procedure, the provision must comply with the minimum requirements that the FTC prescribes. 15 U.S.C. § 2310(a)(2). If the informal dispute settlement procedure properly complies with the FTC's minimum requirements, and if the written warranty requires that the consumer "resort to such procedure before pursuing any legal remedy under this section respecting such warranty, the consumer may not commence a civil action . . . under subsection (d) of this section unless he initially resorts to such procedure . . . ." *Id.* § 2310(a)(3).

## 2. *FAA*

Congress enacted the FAA in 1925 to reverse the longstanding judicial hostility towards arbitration and "to place arbitration agreements on the same footing as other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, __, 122 S. Ct. 754, 761, 151 L. Ed. 2d 755 (2002) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S. Ct. 1647, 1651, 114 L. Ed. 2d 26 (1991)). Section 2 of the FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to

8

arbitration an existing controversy arising out of such a contract, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1994). The Supreme Court has interpreted § 2 of the FAA as "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983).

Generally, a court should enforce an arbitration agreement according to its terms, and no exception exists for a cause of action founded on statutory rights. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626-27, 105 S. Ct. 3346, 3354, 87 L. Ed. 2d 444 (1985) (holding that "the Act itself provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability"). In every statutory right case that the Supreme Court has considered, it has upheld binding arbitration if the statute creating the right did not *explicitly* preclude arbitration. *See Gilmer*, 500 U.S. at 35, 111 S. Ct. at 1657 (holding that courts should enforce binding arbitration agreements regarding claims arising under the ADEA); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484-86, 109 S. Ct. 1917, 1921-22, 104 L. Ed. 2d 526 (1989) (holding that courts should enforce pre-dispute agreements to arbitrate claims under the Securities Act of 1933);

9

*Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 238, 242, 107 S. Ct. 2332, 2343, 2345-46, 96 L. Ed. 2d 185 (1987) (holding that courts should enforce pre-dispute agreements to arbitrate Securities Exchange Act of 1934 claims and Racketeer Influenced and Corrupt Organizations Act claims); *Mitsubishi Motors Corp.*, 473 U.S. at 628-40, 105 S. Ct. at 3355-61 (holding that courts should enforce arbitration of Sherman Antitrust Act claims in international transactions). "Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp.*, 473 U.S. at 628, 105 S. Ct. at 3354-55. Thus, unless Congress has clearly expressed an intention to preclude arbitration of the statutory claim, a party is bound by its agreement to arbitrate. *Id.*[2]

3. *McMahon Test*

Turning to whether Congress intended to preclude arbitration of a statutory claim, we follow the Supreme Court's *McMahon* test. *McMahon*, 482 U.S. at 226-

---

[2] We understand that arbitration agreements, like any other contract, are subject to general contract law and defenses. "Of course, courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'" *Mitsubishi Motors Corp.*, 473 U.S. at 627, 105 S. Ct. at 3354 (quoting 9 U.S.C. § 2 (1994)). In this opinion, however, we address only the enforcement of binding arbitration agreements under the MMWA absent such other general contract law considerations.

27, 107 S. Ct. at 2337-38.  In *McMahon*, the Supreme Court instructed us to consider three factors in deducing Congress' intent: (1) the text of the statute; (2) its legislative history; and (3) whether "an inherent conflict between arbitration and the underlying purposes [of the statute]" exists.  *Id.* at 227, 107 S. Ct. at 2338.  The party opposing the enforcement of the arbitration agreement has the burden of showing that Congress intended to preclude arbitration of the statutory claim.  *Id.* In applying the *McMahon* test, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  *Gilmer,* 500 U.S. at 26, 111 S. Ct. at 1652 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, 103 S. Ct. at 941).  Thus, we analyze each factor in turn to determine whether Congress clearly expressed an intention to preclude binding arbitration of MMWA claims.

a.    McMahon Factor One: MMWA's Text

The MMWA's text does not expressly prohibit arbitration and, in fact, fails to directly mention either binding arbitration or the FAA.  Nevertheless, the Davises argue that the MMWA reserves strictly a judicial forum for consumers by providing a private right of action for consumers.  The Supreme Court, however, has held that a statute's provision for a private right of action alone is inadequate to show that Congress intended to prohibit arbitration.  *Gilmer,* 500 U.S. at 29, 111 S. Ct. at 1653-54 (rejecting the argument that binding arbitration is improper

11

"because it deprives claimants of the judicial forum provided for by the ADEA"). As the Fifth Circuit recently recognized, "binding arbitration generally is understood to be a *substitute* for filing a lawsuit, not a prerequisite." *Walton*, __ F.3d at __ (citing *Mitsubishi Motors Corp.*, 473 U.S. at 628, 105 S. Ct. at 3354) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum."). Furthermore, the fact that the MMWA grants a judicial forum with concurrent jurisdiction in state and federal courts for MMWA claims is insufficient evidence that Congress intended to preclude binding arbitration. *See McMahon*, 482 U.S. at 227, 107 S. Ct. at 2338 (rejecting the argument that compulsory arbitration under the Securities Exchange Act of 1934 is improper because the statute provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction of violations of this title . . . ."); *see also Gilmer*, 500 U.S. at 29, 111 S. Ct. at 1654 (noting that Congress' grant of concurrent jurisdiction in state and federal courts for ADEA claims is consistent with binding arbitration because "arbitration agreements, 'like the provision for concurrent jurisdiction, serve to advance the objective of allowing [claimants] a broader right to select the forum for resolving disputes, whether it be judicial or otherwise'") (quoting *Rodriquez de Quijas*, 490 U.S. at 483, 109 S. Ct. at 1291).

The Davises also argue that because § 2310(d) lists only two exceptions to the private right of action, the internal dispute settlement procedure referenced in § 2310(a) and the class action exception referenced in § 2310(e),[3] Congress intended to preclude any other method of dispute resolution, including binding arbitration. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19-20, 100 S. Ct. 242, 247, 62 L. Ed. 2d 146 (1979) ("[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.") (internal quotations and citations omitted). The § 2310(a) exception to a consumer's private right of action states that, if a warrantor establishes an informal dispute settlement procedure, a consumer must resort to the procedure "before pursuing any legal remedy under this section respecting such warranty." 15 U.S.C. § 2310(a)(3)(c). Section 2310(a) also states that "the consumer may not commence a civil action . . . unless he initially resorts to such procedure" and that "[i]n any civil action arising out of a warranty obligation and relating to a matter considered in such a procedure, any decision in such procedure shall be admissible in evidence." *Id.* Based on this language, the Davises assert

_____

[3] Section 2310(e) is irrelevant to the present discussion.

13

that Congress intended to allow only non-binding alternative dispute resolution procedures. We disagree.

In *Cunningham v. Fleetwood Homes of Ga., Inc.*, we noted that the district court erred "in concluding that, standing alone, the presence of the non-binding § 2310 mechanism in the statutory text requires the conclusion that Magnuson-Moss claims may not be the subject of binding arbitration agreements." 253 F.3d 611, 619 (11th Cir. 2001). The fact that the MMWA regulates § 2310(a) informal dispute settlement procedures does not mean that the Act precludes a court from enforcing a valid binding arbitration agreement. *See id.* at 620 (noting that a statute's provision for one out-of-court settlement mechanism does not necessarily preclude the enforcement of all alternative mechanisms); *see also Gilmer*, 500 U.S. at 29, 111 S. Ct. at 1654 (holding that the ADEA's provision for "out-of-court dispute resolution" is not inconsistent with permitting arbitration under the FAA and that it even "suggests that out-of-court dispute resolution, such as arbitration, is consistent with the statutory scheme established by Congress"). Thus, we are unpersuaded that Congress intended to bar binding arbitration agreements in the language of the MMWA.

      b.   McMahon Factor Two:  Legislative History

The second factor the Supreme Court instructs us to examine in determining

Congress's intent to preclude the application of the FAA is the MMWA's

legislative history. *See McMahon*, 482 U.S. at 226-27, 107 S. Ct. at 2238. Like the

MMWA's text, its legislative history only addresses "internal dispute settlement

procedures;" it never directly addresses the role of binding arbitration or the FAA.

In trying to show that Congress intended to bar binding arbitration, the Davises rely

on the MMWA's House Report, which notes that "[a]n adverse decision in any

informal dispute settlement proceeding would not be a bar to a civil action on the

warranty involved in the proceeding." H.R. Rep. No. 933-1107 (1974), *reprinted in*

1974 U.S.C.C.A.N. 7702, 7723.[4] The Davises argue that Congress considered all

---

[4] The Davises also assert that the Senate intended to bar binding arbitration in the following legislative history:

> For many years warranties have confused and misled the American consumer. A warranty is a complicated legal document whose full essence lies buried in myriads of reported legal decisions and in complicated State codes of commercial law. The consumer's understanding of what a warranty on a particular product means to him frequently does not coincide with the legal meaning.... Typically, a consumer today cannot bargain with consumer product manufacturers or suppliers to obtain a warranty or to adjust the terms of a warranty voluntarily offered. Since almost all consumer products sold today are typically done so with a contract of adhesion, there is no bargaining over contractual terms.

S. Rep. No. 93-151, quoted in 40 Fed. Reg. 60168 (1975). Although several other courts have found this language persuasive, *see, e.g., Boyd v. Homes of Legend, Inc.,* 981 F. Supp. 1423, 1439 (M.D. Ala. 1997), we do not. Instead, we conclude that this passage only expresses Congress' concerns over the complexities of warranties and the unequal bargaining power between warrantors and consumers. The passage does not, however, prohibit binding arbitration. To hold otherwise would be to revert to a *Wilko* attitude towards arbitration. *See Rodriguez de Quijas*, 490 U.S. at 481, 109 S. Ct. at 1920 ("To the extent that *Wilko* rested on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants, it has fallen far out of step with our current strong endorsement of the federal statutes favoring this method of resolving

15

methods of dispute resolution, including arbitration, before allowing warrantors to pursue only informal, non-binding settlement procedures. After a thorough reading of the MMWA's legislative history, we disagree.

The Davises have proved only that the MMWA's legislative history is ambiguous at most. When considering a preliminary draft of the MMWA, the Senate reflected that "it is Congress' intent that warrantors of consumer products cooperate with government and private agencies to establish informal dispute settlement mechanisms that take care of consumer grievances without the aid of litigation *or formal arbitration*." S. Rep. No. 91-876, at 22-23 (1970) (emphasis added). As the Fifth Circuit concluded, "[t]here is still no evidence that Congress intended binding arbitration to be considered an informal dispute settlement procedure. Therefore the fact that any informal dispute settlement procedure must be non-binding, does not imply that Congress meant to preclude binding arbitration, which is of a different nature." *Walton*, __ F.3d at __ . In *McMahon*, the Supreme Court upheld binding arbitration even though the Securities Exchange Act of 1934's legislative history implied that Congress intended to adopt the *Wilko* attitude that arbitration is an inadequate forum in which to enforce statutory claims. *McMahon*, 482 U.S. at 238, 107 S. Ct. at 2343. Any congressional intent to prohibit arbitration

---

disputes.").

16

in the MMWA's legislative history is considerably less clear than the legislative history of the Securities Exchange Act of 1934, which the Supreme Court held did not prohibit binding arbitration in *McMahon*. In light of this ambiguity, the Davises fail to carry their burden of showing a clear congressional intent to prohibit binding arbitration of MMWA claims. Thus, given the absence of any meaningful legislative history barring binding arbitration, coupled with the unquestionable federal policy favoring arbitration, we conclude that Congress did not express a clear intent in the MMWA's legislative history to bar binding arbitration agreements in written warranties.

c.     McMahon Factor Three: The MMWA's Underlying Purposes

The last *McMahon* factor requires us to examine the purposes of the MMWA to determine whether the MMWA and the FAA conflict. *See McMahon*, 482 U.S. at 226-27, 107 S. Ct. at 2232. The MMWA expressly states three purposes: "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a). These purposes are not in conflict with the FAA. In fact, the Supreme Court has repeatedly enforced arbitration of statutory claims where the underlying purpose of the statutes are to protect and inform consumers. *See, e.g., Basic Inc. v. Levinson*, 485 U.S. 224, 234, 108 S. Ct. 978, 985, 99 L. Ed. 2d 194 (1988) (stating

17

that a fundamental purpose of the Securities Acts is the disclosure of information to potential investors); *Rodriguez de Quijas*, 490 U.S. at 485-86, 109 S. Ct. at 1922 (holding that parties may arbitrate Securities Act of 1933 claims); *McMahon*, 482 U.S. at 242, 107 S. Ct. at 2345 (holding that parties may arbitrate Securities Exchange Act of 1934 claims). "[E]ven claims arising under a statute designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute serves its function." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90, 121 S. Ct. 513, 521, 148 L. Ed. 2d 373 (2000) (citations omitted) (holding that parties may arbitrate Truth in Lending Act claims). Consumers can adequately vindicate their rights arising under the MMWA and written warranties in an arbitral forum. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280, 115 S. Ct. 834, 842, 130 L. Ed. 2d 753 (1995) ("Congress, when enacting [the FAA], had the needs of consumers . . . in mind."). Thus, we conclude that the MMWA's consumer protection goals do not conflict with the FAA.

The MMWA's legislative history also indicates that Congress was concerned with addressing the unequal bargaining power between warrantors and consumers with the enactment of the MMWA, thus creating another possible purpose.[5]

---

[5] *See* note 4.

Unequal bargaining power alone, however, is not a sufficient reason to never enforce an arbitration agreement of a statutory claim. *Gilmer*, 500 U.S. at 33, 111 S. Ct. at 1655 (stating that "[m]ere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable . . ."). Inequality in bargaining power is a procedural question that courts should analyze on a case by case basis. *Id.*; *see also McMahon*, 482 U.S. at 230-31, 107 S. Ct. at 2339-40. Thus, unequal bargaining power, like the three declared purposes of the MMWA, does not create such a conflict with the FAA so as to prohibit binding arbitration of MMWA claims.

4. *FTC Regulations and the Chevron Test*

The Davises further argue that we must defer to the FTC regulations, which prohibit binding arbitration. Section 2310(a) authorizes the FTC to promulgate regulations for the MMWA's internal dispute settlement procedures. 15 U.S.C. § 2310(a)(2). The FTC defines "mechanism" as "an informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of Title I of the Act applies, as provided in section 110 of the Act." 16 C.F.R. § 703.1(e) (2002). The FTC has clearly stated that the mechanism is only a precursor to litigation and never binding. *Id.* § 700.8 ("A warrantor shall not indicate in any written warranty or service contract either directly or indirectly that

19

the decision of the warrantor, service contractor, or any designated third party is final or binding in any dispute concerning the warranty or service contract."). Specifically, the FTC regulations provide that "[d]ecisions of the Mechanism shall not be legally binding on any person." *Id.* § 703.5(j). In its interpretive regulations, the FTC has defined "mechanism" broadly, to include all non-judicial resolution procedures, including arbitration. *See* 40 Fed. Reg. 60167, 60210 (1975) (stating that binding arbitration is a "*mechanism*[] whose decisions would be legally binding"); *see also* 40 Fed. Reg. 60618, 60211 (1975) (stating that a "reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the Act").

In determining whether we should defer to the FTC's interpretation of the MMWA, we look to the Supreme Court's decision of *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for

20

the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron*, 467 U.S. at 843-44, 104 S. Ct. at 2781-82. Under this instruction, we must first determine whether Congress directly addressed binding arbitration under the MMWA. *See id.* If Congress' intent is clear, our inquiry ends as we must uphold Congress' will. *Id.* If, however, Congress is silent or the statute is ambiguous, we must then decide if the FTC's interpretation is reasonable. *Id.*

a. Congress' intent

"Addressing the first prong of the *Chevron* inquiry . . . we begin by examining the language in the enforcement provision itself." *Smith v. Bellsouth Telecomm.*, 273 F.3d 1303, 1307 (11th Cir. 2001). After the previously illustrated thorough examination of the MMWA's text and legislative history, we conclude that Congress failed to directly address binding arbitration anywhere in the text or legislative history of the MMWA.[6] *See* discussion *infra* Parts IV.B.3.a-3.b. Because we believe the intent of Congress is unclear, we must proceed to the second prong of the *Chevron* analysis.

b. Reasonableness of the FTC's construction

---

[6] In *Walton*, the Fifth Circuit held that because Congress did not evince a clear intent to prohibit arbitration in the MMWA, "[t]he clear congressional intent in favor of enforcing valid arbitration agreements controls in this case." __ F.3d at __. Thus, believing that Congress' clear intent in passing the FAA controlled the MMWA, the majority opinion of *Walton* never reached the second prong of the *Chevron* analysis. *Id.* at __ n.14.

21

The second prong of the *Chevron* inquiry requires us to determine whether the FTC's construction of the statute is reasonable. *See Chevron*, 467 U.S. at 843-44, 104 S. Ct. at 2781-82; *see also Amberg v. FDIC*, 934 F.2d 681, 687 (5th Cir. 1991) ("[W]e will not bow our heads with closed eyes and walk away; rather we must still look at the [agency's interpretations] and see if they can be classified as reasonable."). [7] In determining whether the FTC regulations are reasonable, we look to the rationale behind the FTC's construction. In its legislative regulations, the FTC reasoned that a decision regarding the warranty dispute may not be binding because "section 110(d) of the Act gives state and federal courts jurisdiction over suits for breach of warranty and service contracts." 16 C.F.R. § 700.8. The FTC further explained that binding arbitration agreements are not allowed in written warranties because:

> First, as the Staff Report indicates, Congressional intent was that decisions of Section 110 Mechanisms not be legally binding. Second, even if binding Mechanisms were contemplated by Section 110 of the Act, the Commission is not prepared, at this point in time, to develop guidelines for a system in which consumers would commit themselves,

[7] The *Chevron* standard of deference appears to apply only to the FTC's legislative regulations, and not to the FTC's interpretive regulations. *See Walton*, __ F.3d at __ n.7 (discussing the level of deference for legislative regulations versus interpretive regulations). Thus, while we must defer to the legislative regulations in 16 C.F.R. § 701-03 (2002) if they are reasonable, the FTC's interpretive regulations are only "entitled to respect" to the extent they "have the power to persuade." *See Christensen v. Harris County*, 529 U.S. 576, 587, 120 S. Ct. 1655, 1663, 146 L. Ed. 2d 621 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 164, 89 L. Ed. 124 (1944)) (internal quotations omitted); *see also Walton*, __ F.3d at __ n.7.

at the time of product purchase, to resolve any difficulties in a binding, but non-judicial, proceeding. The Commission is not now convinced that any guidelines which it set out could ensure sufficient protection for consumers.

40 Fed. Reg. 60167, 60210 (1975). In light of the FTC's reasoning, we conclude its rationale is unreasonable and do not defer to it.

In the legislative regulations, the FTC bases its construction on Congress' grant of concurrent jurisdiction. *See* 16 C.F.R. § 700.8. As we previously discussed, a statute's provision for a judicial forum does not preclude enforcement of a binding arbitration agreement under the FAA. *See infra* pp. 10-12. Thus, the FTC's motive behind the legislative regulation is contradictory to Supreme Court rationale, and we conclude that its interpretation is unreasonable. *See McMahon*, 482 U.S. at 238, 107 S. Ct. at 2343 (refusing to follow Congress' prohibition of arbitration in the Securities Exchange Act of 1934's legislative history when Congress' motive was contradictory to Supreme Court rationale). We also conclude that the FTC's additional rationale is unreasonable. Although the FTC first stated that it looked to a subcommittee staff report (which appears to no longer be attainable) to determine Congress's intent, the FTC continued, evincing its major concern that an arbitral forum will not adequately protect the individual consumers. The Supreme Court in *McMahon*, however, rejected this same hostility shown by the SEC. 482 U.S. at 234 n.3, 107 S. Ct. at 2341 n.3 (declining to defer to the

23

SEC's interpretation of the Securities Exchange Act of 1934 based on the SEC's

*Wilko* attitude). Instead, the Supreme Court holds that arbitration is favorable to the

individual. *See Allied-Bruce Terminix Cos.*, 513 U.S. at 279, 115 S. Ct. at 842-43

(noting that "arbitration's advantages often would seem helpful to individuals, say,

complaining about a product, who need a less expensive alternative to litigation.").

The dissent in *Walton*, which holds that the FTC regulations are reasonable,

admits that "deference might be inappropriate if the FTC's concerns about the

impact of binding arbitration on consumers were attributable to the Commission's

reliance on the Supreme Court's expressed hostility towards arbitration in now-

abandoned cases such as *Wilko*." __ F.3d at __ (King, dissenting) (citing *McMahon*,

482 U.S. at 234 n.3, 107 S. Ct. at 2341 n.3) (declining to defer to the SEC's

interpretation of the Securities Exchange Act of 1934 based on the SEC's admission

that its actions were "based on the court of appeals decision following *Wilko*, . . .

that agreements to arbitrate Rule 10b-5 claims were not, in fact, enforceable"). The

*Walton* dissent distinguishes this case from *McMahon* based on a recent FTC

regulatory review statement:

> The Commission examined the legality and the merits of mandatory
> binding arbitration clauses in written consumer products warranties when
> it promulgated Rule 703 in 1975.  Although several industry
> representatives at that time had recommended that the Rule allow
> warrantors to require consumers to submit to binding arbitration, the
> Commission rejected that view as being contrary to the congressional

24

intent.  *The Commission based this decision on its analysis of the plain language of the Warranty Act*.

__ F.3d at __ (King, dissenting and adding emphasis) (quoting 64 Fed. Reg. 19700, 19708 (Apr. 22, 1999).  In the next paragraph, however, the FTC reaffirms its original rationale that it "is not prepared . . . to develop guidelines for a system in which consumers would commit themselves, at the time of product purchase, to resolve any difficulties in a binding, but non-judicial, proceeding.  The Commission is not now convinced that any guidelines which it set out could ensure sufficient protection for consumers."  64 Fed. Reg. 19700, 19708 (Apr. 22, 1999) (citing 40 Fed. Reg. 60167, 60210 (1975)).[8]  As we have previously explained, this interpretation is no longer valid based on the Supreme Court's abandonment of its hostile attitude towards arbitration.  In light of the Supreme Court's acknowledgment and continual enforcement of the strong federal policy toward arbitration, we conclude this rationale to be based on an impermissible construction of the statute.  Thus, we conclude that the FTC's interpretation of the MMWA is unreasonable, and we decline to defer to the FTC regulations of the MMWA regarding binding arbitration in written warranties.

---

[8]  The FTC admits that, under the MMWA, "warrantors are not precluded from offering a binding arbitration option to consumers after a warranty dispute has arisen."  64 Fed. Reg. 19700, 19708 (Apr. 22, 1999) (citing 40 Fed. Reg. 60168, 60211 (1975)).  As to pre-dispute binding arbitration, however, "[t]he Commission believes that [its original] interpretation continues to be correct."  64 Fed. Reg. 19700, 19708 (Apr. 22, 1999).

## V.    CONCLUSION

After a thorough review of the MMWA and the FAA, combined with the strong federal policy favoring arbitration, we hold that written warranty claims arising under the Magnuson-Moss Warranty Act may be subject to valid binding arbitration agreements.  Accordingly, we reverse the judgment of the district court and remand this case for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**