# STATE OF MICHIGAN

# COURT OF APPEALS

LORETTA GAYLE GALEA,

Plaintiff-Appellant,

FOR PUBLICATION
March 13, 2018

v

No. 334576
Oakland Circuit Court
LC No. 2016-150986-NZ

FCA US LLC, JIM REIHL'S FRIENDLY
CHRYSLER JEEP, INC., and US BANK NA,

Defendants-Appellees.

Before: GLEICHER, P.J., and GADOLA and O'BRIEN, JJ.

GLEICHER, J. (*concurring in part and dissenting in part*).

Plaintiff Loretta Galea contends that her brand new Jeep Cherokee turned out to be a lemon. She sued the dealer who sold it and the bank that financed the deal, asserting a variety of warranty claims. The defendants countered with a signed arbitration agreement. Galea argues that the Magnuson-Moss Warranty Act (MMWA), 15 USC 2301 *et seq.*, prohibits binding arbitration of warranty disputes. This argument collides with *Abela v Gen Motors Corp*, 469 Mich 603; 677 NW2d 325 (2004), in which the Supreme Court held directly to the contrary. But Galea also maintains that by failing to mention arbitration, her warranty violated the single-document rule embodied in 16 CFR 701.3, a Federal Trade Commission (FTC) regulation implementing the MMWA. This omission, Galea insists, takes arbitration off the table.

The majority interprets the Supreme Court's analysis in *Abela* to mean that a binding arbitration provision need not be included in a vehicle warranty. But *Abela* never mentions the single-document rule, and neither do the two federal cases guiding the *Abela* majority's memorandum opinion. The only appellate federal case squarely addressing the issue holds that arbitration agreements outside a warranty are not enforceable. *Cunningham v Fleetwood Homes of Georgia, Inc*, 253 F3d 611 (CA 11, 2001). I believe *Cunningham*'s reasoning should prevail over the equivocal dicta on which the majority relies, and respectfully dissent.

I

Congress passed the MMWA in 1975, as a remedy for inadequate and misleading warranties on consumer goods. *Davis v Southern Energy Homes, Inc*, 305 F3d 1268, 1272 (CA 11, 2002). Senator Frank Moss, one of the act's sponsors, explained on the Senate floor that " '[b]y making warranties of consumer products clear and understandable through creating a uniform terminology of warranty coverage, consumers will for the first time have a clear and

-1-

concise understanding of the terms of warranties of products they are considering purchasing.' " Steverson & Munter, *Then and Now: Reviving the Promise of the Magnuson-Moss Warranty Act*, 63 U Kan L Rev 227, 229 n 6 (2015), quoting 120 Cong Rec 40711 (1974).

The act encourages warrantors to let consumers know exactly what to do when a product fails. The second section of the MMWA (only definitions occupy the first) highlights the act's *disclosure* function:

> In order to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products, any warrantor warranting a consumer product to a consumer by means of a written warranty shall, to the extent required by rules of the Commission, fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty. [15 USC 2302(a).]

This paragraph delegates to the FTC ("the Commission") the authority to make rules advancing Congress's information-sharing goal. The principle guiding the rule-making, as expressed in the balance of the text of 15 USC 2302(a), is that a warrantor must advise a consumer of the practical components of a warranty in language that the consumer can easily find and understand. "The comprehensive disclosure requirements of [the MMWA] are an integral, if not the central, feature of the [a]ct, perhaps eclipsing even the civil action and informal dispute resolution mechanisms in their importance to consumers." *Cunningham*, 253 F3d at 621.

The act commanded the FTC to consider 10 "items" as fodder for informational regulations. 15 USC 2302(a). The "items" include very basic matters such as "[t]he identification of the names and addresses of the warrantors," § 2302(a)(1), "[t]he identity of the party or parties to whom the warranty is extended," § 2302(a)(2), and "[t]he products or parts covered," § 2302(a)(3). Also included in the list are: "[i]nformation respecting the availability of any informal dispute settlement procedure offered by the warrantor," § 2302(a)(8), and "[a] brief, general description of the legal remedies available to the consumer," § 2302(a)(9).

The FTC implemented its charge by promulgating 16 CFR 701.3(a), which obliges warrantors to "clearly and conspicuously disclose in a single document" all information relevant to enforcement of a warranty:

> Any warrantor warranting to a consumer by means of a written warranty a consumer product actually costing the consumer more than $15.00 shall clearly and conspicuously disclose in a single document in simple and readily understood language, the following items of information. . . .

The mandatory disclosures that must appear in a single document are nine in number. The most pertinent here are:

> (6) Information respecting the availability of any informal dispute settlement mechanism elected by the warrantor in compliance with part 703 of this subchapter;

(7) Any limitations on the duration of implied warranties, disclosed on the face of the warranty as provided in . . . 15 USC 2308 . . .;

(8) Any exclusions of or limitations on relief such as incidental or consequential damages . . .;

(9) A statement in the following language:

This warranty gives you specific legal rights, and you may also have other rights which vary from State to State. [16 CFR 701.3.]

Read together, these provisions communicate that warrantors must thoroughly advise consumers of the contours of their legal rights and remedies.

The majority and I part company regarding whether the term "informal dispute settlement mechanism" encompasses binding arbitration in the context of the single-document rule. The FTC has expressed that a binding arbitration agreement qualifies as an "informal dispute settlement mechanism" and is not permitted by the MMWA. See 16 CFR 703.5(j); *Davis*, 305 F3d at 1277 (compiling federal register citations). The FTC's rejection of arbitration as an acceptable mechanism was the subject of the two federal appellate opinions on which *Abela* relies. But subsections (6), (7) and (8) concern a consumer's right to *notice* about available legal remedies, not whether some remedies are barred. Galea contends that a mandatory arbitration of a warranty dispute falls within these notice requirements, and I agree.

II

Galea's complaint alleges that the warranty on her vehicle did not include an arbitration provision. Defendants have not rebutted this allegation. The arbitration agreement they seek to enforce is instead contained in a "Friends Program Pricing and Acknowledgement Form" bearing Galea's signature and advising that in consideration for the discount she received on her vehicle, she agreed to arbitrate any warranty disputes:

The Chrysler Employee Friends Program allows eligible purchasers to obtain a new vehicle at a substantial discount. **I understand that, in consideration for this discount, I will not be able to bring a lawsuit for any warranty disputes relating to this vehicle. Instead, I agree to submit any and all disputes through the Chrysler Vehicle Resolution Process, which includes mandatory arbitration that is binding on both Chrysler and me.** Before initiating this binding arbitration, I will attempt to resolve the dispute (1) at the dealership, (2) through the Customer Assistance Center. . . . . I represent to Chrysler that before purchasing or leasing a vehicle under this Program, I received and read the Program Rules and Provisions ("Rules"), specifically including a document entitled "Vehicle Resolution Process – Binding Arbitration" . . . . [Emphasis in original.]

The referenced "Official Program Rules" document is eight pages long and covers a number of subjects including the "program overview," the characteristics of the employees and others eligible for discounted pricing, and "dealer reimbursement." Pages six through seven address arbitration and other dispute resolution processes:

**Dispute Resolution Process – Binding Arbitration:**

Friends program participants must follow the Vehicle Resolution Process summarized below for warranty disputes regarding a vehicle purchased or leased under the Program.

Experience has shown that most problems can be resolved by taking the following steps:

1. Attempt to resolve problems with dealership management.

2. If additional help is needed, contact Chrysler's Customer Assistance Center at 1-800-992-1997.

3. If still unable to resolve the problems satisfactorily, the last stage is binding arbitration. Contact NCDS (National Center for Dispute Settlement) at 1-866-937-2461 for further information.

1. ARBITRATION

Arbitration is a process by which two or more parties resolve a dispute through the use of a third party neutral. As a condition of participation in the program, employees, retirees and eligible family members agree that binding arbitration is solely and exclusively the final step for resolving any warranty dispute concerning the vehicles purchased or leased under the Program. **They may not bring a separate lawsuit**. . . .

. . . NCDS reviews only vehicle disputes involving Chrysler's Limited Warranty on a Chrysler vehicle. If the complaint is eligible, the customer has the option to select either an oral presentation with a single dispute settler or a "documents only" review by a panel of three decision-makers. . . .

The warranty for Galea's vehicle occupies a separate booklet and consumes approximately 30 pages. Toward the end is a five-page section titled "How to Deal With Warranty Problems." Arbitration is not mentioned. The first "remedy" suggested is to "talk to your dealer's service manager or sales manager," and if unsuccessful, "[d]iscuss your problem with the owner or general manager of the dealership." If that does not work, the warranty offers that the consumer should "contact the Chrysler Customer Assistance Center. You'll find the address in section 7.2."

By omitting any mention of the legal remedies available (including binding arbitration), the warranty on Galea's Jeep violates the single-document rule.

## III

The majority reads *Abela* to mean that "[a]greements to submit to binding arbitration . . . fall outside the FTC's rule-making authority under the MMWA," and therefore, "the single document rule does not apply to binding arbitration agreements." My disagreement hinges on the interpretation of subsection (6) of the FTC's implementing regulation, which declares that a warranty must include "[i]nformation respecting the availability of any informal dispute settlement mechanism elected by the warrantor in compliance with part 703 of this subchapter." 16 CFR 701.3(6). The majority holds that in *Abela* the Supreme Court rejected the single-document rule, even though the subject was not raised or even mentioned in the opinion.

*Abela*'s rationale rests on two decisions rendered by two federal appellate courts, the Courts of Appeal for the Fifth and Eleventh Circuits. The majority asserts that those two cases hold that arbitration is not an "informal dispute settlement procedure," and extrapolates from there to a conclusion that the single-document rule does not require mention of arbitration in a warranty. Here is the paragraph from *Abela* that guides the majority's analysis:

> Although the federal courts of appeals decisions are not binding, we nevertheless affirm the decision of the Court of Appeals. We have examined the decisions in *Walton v Rose Mobile Homes LLC*, 298 F3d 470 (CA 5, 2002), and *Davis v Southern Energy Homes, Inc*, 305 F3d 1268 (CA 11, 2002), and find their analyses and conclusions persuasive. Both decisions carefully examined the MMWA and the [Federal Arbitration Act], and **both concluded that the text, the legislative history, and the purpose of the MMWA did not evidence a congressional intent under the FAA to bar agreements for binding arbitration of claims covered by the MMWA.** Persuaded by these analyses of the federal courts of appeals, we conclude that plaintiffs' agreement with defendant to address the warranty claim through defendant's dispute resolution process, including mandatory arbitration, is enforceable. [*Abela*, 469 Mich at 607 (emphasis added).]

This paragraph, and the highlighted portion in particular, do not support (or even speak to) the proposition advanced by the majority. *Abela* holds that Congress did not intend the MMWA to bar binding arbitration. *Walton* and *Davis* express the same holding. The majority seizes on obiter dictum in *Walton* and *Davis* positing that the FTC improperly nixed binding arbitration as an available remedy by mistakenly interpreting arbitration as an "informal dispute settlement procedure." That dicta, the majority concludes, means that "[a]greements to submit to binding arbitration . . . fall outside the FTC's rule-making authority under the MMWA, and the single-document rule does not apply to binding arbitration agreements. A warranty need not inform the consumer that his or her legal rights are limited to binding arbitration."

I submit that the majority over-reads all three cases and incorrectly treats dicta as precedent. None of the three cases erase notice of binding arbitration from the single-document rule and none contradict *Cunningham*. Further, an analysis of the single-document rule rests on

an entirely different legal framework. That framework supports that a warrantor must notify a consumer in the warranty that any breach of warranty claim must be submitted to binding arbitration.

A

I begin with *Cunningham* because it is a decision of the same court that decided *Davis*, one of the two cases relied on by the majority.

The *Cunningham* plaintiffs purchased a motor home. They sued for breach of warranty and also raised other claims. The defense moved to compel arbitration. The parties presented two issues to the federal court of appeals: whether the MMWA prohibits binding arbitration, and whether the warranty violated the single-document rule by omitting any reference to binding arbitration. The Court concluded that the informal dispute resolution procedures mentioned in the act were "prerequisites" to a lawsuit rather than substitutes barring other procedures, such as arbitration. *Cunningham*, 253 F3d at 618-619. This conclusion rested on the court's analysis of the legislative history of the MMWA and abundant United States Supreme Court jurisprudence standing for the proposition that "the presence of one type of non-judicial mechanism in the text does not necessarily preclude the possibility of alternative mechanisms." *Id*. at 620. The Court spent little time on this subject, however, because it found another aspect of the case dispositive—the single-document rule. The court explained:

> [W]hile we are inclined to think that the presence of the non-binding § 2310 mechanism in the statutory text does not in and of itself mandate the conclusion that [the MMWA] renders binding arbitration agreements unenforceable, other key provisions of [the MMWA], together with § 2310, cast considerable doubt on the propriety of the particular arrangement at issue here. These provisions include the requirements that significant conditions, limitations, and terms of the warranty be included in simple language in the warranty itself, and that the warranty must consist of a single, understandable document made available prior to sale to the consumer. [*Id*.]

In other words, the Eleventh Circuit in *Cunningham* found that although the "informal dispute settlement procedure" language of the statute could not be construed as a *bar* to arbitration, it nevertheless compelled that a mandatory arbitration be included in a single warranty document.

This is so because context matters. When considered as an impediment to arbitration, the phrase does not do enough work to supplant the presumption in favor of arbitration described throughout United States Supreme Court caselaw. When considered as part of a regulation governing the content of a warranty, the phrase embraces arbitration because the FTC says it does. In the *notice* context, the FTC makes the rules.

The *Cunningham* Court had no difficulty concluding that in contrast with the "procedural protections" of arbitration found in federal law, "§ 2302 of [the MMWA] and the rules promulgated by the FCC . . . do in fact impose substantive obligations on manufacturers that choose to issue warranties, requiring clear disclosure of warranty terms in a single document." *Id*. at 623. The Court drew this conclusion from the legislative history and purpose of the act,

-6-

emphasizing that the MMWA was remedial legislation intended to counteract complex, misleading warranty language: "Congress sought to remedy the situation by requiring that material terms be presented in clear language in a single document." *Id*. at 621. At Congress's behest, the FTC "crafted the disclosure requirements so that they might 'inform the consumer of the full extent of his or her obligations under the warranty, and to eliminate confusion as to the necessary steps which he or she must take in order to get warranty performance.' " *Id*. (citation omitted). The FTC understood that a warranty omitting relevant terms was just as unhelpful as a warranty written in a complicated or misleading way. "The single document rule reinforces these concerns by requiring warrantors to present all information relevant to the warranty in one place, where it might be easily located and assimilated by the consumer. *Id*. The Court concluded, "Compelling arbitration on the basis of an arbitration agreement that is not referenced in the warranty presents an inherent conflict with the [a]ct's purpose of providing clear and concise warranties to consumers." *Id*. at 622.

B

I turn next to *Davis*, also decided by the Eleventh Circuit. Judge Anderson signed both *Cunningham* and *Davis*, a fact that should not be lost in the caselaw shuffle. Had the results in these two cases been incompatible, one would expect that Judge Anderson would have called that fact to a reader's attention. But he did not, and they are not incompatible because *Davis*'s holding is sharply limited: "We hold that the [MMWA] *permits* binding arbitration and that a written warranty claim arising under the [MMWA] may be subject to a valid pre-dispute binding arbitration agreement." *Davis*, 305 F3d at 1270 (emphasis added). *Cunningham* is cited several times in *Davis*, never disapprovingly. Although the majority locates in *Davis* a snippet of text citing another case (*Walton*) for the proposition that arbitration was not considered by Congress as "an informal dispute settlement procedure," the case does not stand for that proposition. Rather, the *Davis* Court painstakingly analyzed the question of arbitrability under the MMWA based on two lines of federal caselaw: *Shearson/American Express, Inc v McMahon*, 482 US 220; 107 S Ct 2332; 96 L Ed 2d 185 (1987), and *Chevron USA, Inc v Natural Resource Defense Council, Inc*, 467 US 837; 104 S Ct 2778; 81 L Ed 2d 694 (1984).

These cases present the tests used by the federal courts to ascertain whether Congress intended to preclude arbitration of a statutory claim (*McMahon*) and whether an agency regulation merits a federal court's deference (*Chevron*). The *Davis* Court determined that Congress did not clearly express in the MMWA the intent to preclude binding arbitration. *Davis*, 305 F3d at 1272. It further found that the FTC's belief to the contrary was unreasonable and not worthy of deference. *Id*. at 1280. This analysis does not undermine *Cunningham*'s conclusion that to be enforceable, a binding arbitration provision must be included in a warranty. The FTC's opinion that arbitration is barred received no deference, but its view that a warranty must describe the legal remedies available to a consumer did. *Davis* and *Cunningham* peacefully coexist in the Eleventh Circuit because they address different legal issues in a readily reconcilable way.

C

Now to *Walton*, a two-to-one decision of the Fifth Circuit. Like *Davis*, *Walton* does not discuss the single-document rule. Also like *Davis*, the analysis presented in *Walton* rests on *McMahon* and *Chevron*. In dictum, the Court observed, "We also note that binding arbitration is not normally considered to be an 'informal dispute settlement procedure,' and it therefore seems to fall outside the bounds of the MMWA and of the FTC's power to prescribe regulations." *Walton*, 298 F3d at 476.[1] This rather tentative conclusion about the common understanding of an "informal dispute settlement procedure" appears at the end of an extended discussion of the first of the *McMahon* factors, whether in drafting the MMWA Congress spoke to the issue of arbitration. I respectfully submit that the majority errs by elevating this dicta to a rule of law that the FTC lacked the authority to consider arbitration as a remedy that must be included in a single warranty document.[2]

IV

When it comes to the information that must be included in a warranty, the real question presented is: who makes the rules? The answer is incontrovertible: Congress entrusted the FTC with the authority to decide what information a warranty must contain. 15 USC 2302(a). The FTC promulgated a regulation mandating that the availability of any "informal dispute settlement procedure" must be disclosed "clearly and conspicuously in a single document." 16 CFR 701.3(a)(6). The FTC has taken the position that arbitration is an "informal dispute settlement procedure" for that purpose. *Abela*, *Walton*, and *Davis* hold that a consumer may be compelled to arbitrate. But none of those cases considered whether the FTC could properly require that an arbitration agreement be included in the warranty. In the federal appellate courts, only *Cunningham* has reached that issue, and its verdict supports Galea.

The single-document rule furthers an important congressional objective: notifying consumers about their warranty rights. Including all relevant information in a single location allows a consumer to easily locate her remedies. When a warranty dispute erupts, there is no more important piece of information to a consumer than: what do I do now? If a consumer is limited to binding arbitration, it follows that this information must be included in the warranty. That is what both Congress and the FTC intended. Holding otherwise dilutes a critical protection of the MMWA and contradicts its history and purpose. Based on defendant Reihl's violation of

---

[1] Ironically, our Supreme Court disagrees and most assuredly views arbitration as an "informal" dispute resolution procedure: "By narrowing the grounds upon which an arbitration decision may be invaded, the court rules preserve the efficiency and reliability of arbitration as an expedited, efficient, and informal means of private dispute resolution." *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 495; 475 NW2d 704 (1991).

[2] The holding in *Walton* does not speak to whether arbitration is or is not an "informal dispute settlement procedure": "We therefore hold that the text, legislative history, and purpose of the MMWA do not evince a congressional intent to bar arbitration of MMWA written warranty claims." *Walton*, 298 F3d at 478.

the single-document rule, I would reverse the circuit court's order sending the case to arbitration and would remand for a trial.


/s/ Elizabeth L. Gleicher