# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DIANA KOLEV,

   *Plaintiff-Appellant,*

   v.

EUROMOTORS WEST/THE AUTO
GALLERY; MOTORCARS WEST LLC;
H M GRAY FAMILY II INC; GRAY
FAMILY II LLC; BENNETT
AUTOMOTIVE I INC; BENNETT
AUTOMOTIVE II INC,

   *Defendants-Appellees,*

   and

PORSCHE CARS NORTH AMERICA,
INC.,

   *Defendant.*

No. 09-55963

D.C. No.
8:07-cv-01171-
AG-AN

OPINION

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted
February 7, 2011—Pasadena, California

Filed September 20, 2011

Before: Dorothy W. Nelson, Stephen Reinhardt, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Reinhardt;
Dissent by Judge N.R. Smith

17791

---

**COUNSEL**

Martin W. Anderson and Jeffrey Kane, Santa Ana, California, for the plaintiff-appellant.

Arent Fox, Aaron H. Jacoby, John D. Bronstein, and Melanie S. Joo, Los Angeles, California, for the defendants-appellees.

---

**OPINION**

REINHARDT, Circuit Judge:

Diana Kolev brought suit against Euromotors West/The Auto Gallery, Motorcars West LLC, HM Gray Family II Inc., Gray Family II LLC, Bennett Automotive I Inc., Bennett Automotive II Inc. ("the Dealership") and Porsche Cars North America, Inc. ("Porsche"), when the pre-owned (formerly known as "used") automobile that she purchased from the Dealership developed serious mechanical problems during the warranty period and the Dealership refused to honor her warranty claims. She alleges breach of implied and express warranties under the Magnuson-Moss Warranty Act ("MMWA"), and breach of contract and unconscionability under California law.

The district court granted the Dealership's petition to compel arbitration pursuant to the mandatory arbitration provision in the sales contract that Kolev signed when she bought the car. It also stayed the action against Porsche. After the arbitrator resolved most of the claims in favor of the Dealership, the district court confirmed the arbitration award. We review de

novo the district court's order granting the petition to compel arbitration. *See Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007).

**[1]** Kolev's principal argument on appeal is that the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* (2000), bars the provision mandating pre-dispute binding arbitration of her warranty claims against the Dealership. Although the text of the MMWA does not specifically address the validity of pre-dispute mandatory binding arbitration, Congress expressly delegated rulemaking authority under the statute to the Federal Trade Commission ("FTC"). *See* 15 U.S.C. § 2310(a)(2). Pursuant to this authority, the FTC construed the MMWA as barring pre-dispute mandatory binding arbitration provisions covering written warranty agreements and issued a rule prohibiting judicial enforcement of such provisions with respect to consumer claims brought under the MMWA. *See* 16 C.F.R. § 703.5; 40 Fed. Reg. 60167, 60210 (Dec. 31, 1975).

We apply a two-step inquiry in reviewing agency constructions of statutes. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The first step requires us to ask whether Congress has "directly spoken to the precise question at issue" in a way that renders its intention "clear" and "unambiguously expressed." *Id.* at 842-44. If we find that the "statute is silent or ambiguous with respect to the specific issue," then we proceed to the second step, and ask whether an interpretation by the agency to which Congress has delegated rulemaking authority "is based on a permissible construction of the statute." *Id.* at 843. If Congress' intent is not clear under the statute and if "Congress delegated authority to the agency generally to make rules carrying the force of law, and [ ] the agency interpretation claiming deference was promulgated in the exercise of that authority," *United States v. Mead Corp.*, 533 U.S. 218, 226-

27 (2001), then we must defer to the agency's reasonable construction of the ambiguous statutory provision.[1]

"Under the first prong of *Chevron*, we use traditional tools of statutory construction to determine whether Congress expressed a clear intent on the issue in question." *Schneider v. Chertoff*, 450 F.3d 944, 953 (9th Cir. 2006) (internal citations omitted). We agree with the Fifth Circuit that "[t]he text of the MMWA does not specifically address binding arbitration," *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 475 (5th Cir. 2002); *see also Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1278 (11th Cir. 2002) ("Congress failed to directly address binding arbitration anywhere in the text . . . of the MMWA."), and conclude that Congress has not "directly spoken to the precise question," *Chevron*, 467 U.S. at 842, whether the MMWA bars warranty provisions that mandate pre-dispute binding arbitration of warranty claims.

**[2]** Accordingly, we proceed to the second prong of the *Chevron* inquiry, under which we ask whether the agency to which Congress delegated rulemaking authority resolved the statutory ambiguity based on a permissible construction of the statute. 467 U.S. at 843. In enacting the MMWA, Congress expressly delegated authority to the FTC to "prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty." 15 U.S.C. § 2310(a)(2). Pursuant to this authority, the FTC promulgated Rule 703, which provides that "[d]ecisions of [any] Mechanism shall not be legally binding on any person," 16 C.F.R. § 703.5(j), defining a "Mechanism"

---

[1]For cases in which the *Mead* requirements for *Chevron* deference are not met, we review the agency's interpretation under the *Skidmore* standard, whereby the interpretation is "entitled not to deference but to a lesser 'respect' based on the persuasiveness of the agency decision." *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1067 (9th Cir. 2003); *Skidmore v. Swift & Co.*, 323 U.S. 134, 139 (1944). We explain for the reasons set forth below why the *Mead* requirements for *Chevron* deference are fully satisfied in this case.

as an "informal dispute settlement procedure which is incorporated into the terms of a written warranty." § 703.1(e). If a consumer "is dissatisfied with [a Mechanism's] decision or warrantor's intended actions, or eventual performance," the Rule states, then "legal remedies, including use of small claims court, may be pursued." § 703.5(g).

When it published Rule 703, the FTC explained:

> Several industry representatives contended that warrantors should be allowed to require consumers to resort to mechanisms whose decisions would be legally binding (e.g., binding arbitration). The Rule does not allow this for two reasons. First, as the Staff Report indicates, Congressional intent was that decisions of Section 110 Mechanisms[4] not be legally binding. Second, even if binding mechanisms were contemplated by Section 110 of the Act, the [FTC] is not prepared, at this point in time, to develop guidelines for a system in which consumers would commit themselves, at the time of product purchase, to resolve any difficulties in a binding, but non-judicial, proceeding. The [FTC] is not now convinced that any guidelines which it set out could ensure sufficient protection for consumers.
>
> [4] "Section 110 Mechanisms" is a reference to those informal dispute settlement mechanisms authorized by Section 110 of the MMWA, found at 15 U.S.C. § 2310.

40 Fed. Reg. 60167, 60210 (Dec. 31, 1975). The FTC's explanation concluded that "reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the Act." *Id*. at 60211.[2] In 1999, the FTC restated its posi-

---

[2]Although the written warranty in this case was not contained within the record, the sales contract included an arbitration clause that mandated pre-

tion that mandatory pre-dispute binding arbitration clauses are invalid under the MMWA and affirmed that "this interpretation continues to be correct." 64 Fed. Reg. 19700, 19708 (Apr. 22, 1999). Expressly declining to amend 16 C.F.R. § 703.5(j) to permit binding arbitration, the FTC concluded that "Rule 703 will continue to prohibit warrantors from including binding arbitration clauses in their contracts with consumers that would require consumers to submit warranty disputes to binding arbitration." *Id.* at 19708-09.

**[3]** There are three reasons why the FTC's interpretation of the MMWA as precluding pre-dispute mandatory binding arbitration is a reasonable construction of the statute. First, the FTC sought in devising Rule 703 to implement Congress's intent, based on evidence from the legislative history of the MMWA. Specifically, in its Statement of Basis and Purpose for Rule 703, the FTC cited to the House Subcommittee Staff Report as evidence that "[c]ongressional intent was that decisions of Section 110 Mechanisms not be legally binding." 40 Fed. Reg. at 60210. The Subcommittee Staff Report on which the FTC based its independent interpretation of Congress's intention makes clear that consumers must be made aware of their rights, including their right to pursue litigation, because otherwise "the fate of aggrieved consumers usually rests with the seller/manufacturer and its willingness to live up to its promises." 120 Cong. Rec. 31,318 (1974). The FTC's reliance on such legislative history in seeking to implement Con-

---

dispute binding arbitration and stated that any warranties regarding the vehicle would be located in a separate written warranty; both parties and the district court assumed that such written warranty existed and that it referred to the arbitration clause. If, however, the mandatory arbitration clause actually appeared only in the sales contract and not also in the written warranty, then it would be even more clearly impermissible. *See Cunningham v. Fleetwood Homes of Georgia, Inc.*, 253 F.3d 611, 622 (11th Cir. 2001) ("Compelling arbitration on the basis of an arbitration agreement that is not referenced in the warranty presents an inherent conflict with the [MMWA]'s purpose of providing clear and concise warranties to consumers.").

gress's intent is the first reason that its rule barring judicial enforcement of pre-dispute mandatory binding arbitration agreements is a reasonable construction of the MMWA.

**[4]** Second, the FTC's interpretation that the MMWA bars pre-dispute mandatory binding arbitration advances the statute's purpose of protecting consumers from being forced into involuntary agreements that they cannot negotiate. In enacting the MMWA, Congress sought to address the extreme inequality in bargaining power that vendors wielded over consumers by "providing consumers with access to reasonable and effective remedies" for breaches of warranty, and by "provid[ing] the Federal Trade Commission (FTC) with means of better protecting consumers." H.R. Rep. No. 93-1107, at 24 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7702, 7702. The FTC, however, was "not . . . convinced that any guidelines which it set out could ensure sufficient protection for consumers." 40 Fed. Reg. at 60211. Most important, the agency construed the statute as prohibiting vendors from including provisions that mandate arbitration of disputes over breaches of warranty before a dispute arises, in order to prevent them from depriving consumers of the right that it guaranteed them to litigate breaches of warranty. *See* H.R. Rep. No. 93-1107, at 41, 1974 U.S.C.C.A.N. at 7723 ("An adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding.").

**[5]** Third, we "should accord particular deference to the FTC's regulatory interpretation of the MMWA because the regulations represent a longstanding, consistent interpretation of the statute." *Walton*, 298 F.3d at 490 (King, C.J., dissenting). The Supreme Court has made clear that "a court may accord great weight to the longstanding interpretation placed on a statute by an agency charged with its administration," *NLRB v. Bell Aerospace Co. Div. Textron Inc.*, 416 U.S. 267, 274-75 (1974), because "agency interpretations that are of long standing come before us with a certain credential of reasonableness, since it is rare that error would long persist."

*Smiley v. Citibank*, 517 U.S. 735, 740 (1996). In this case, the agency's interpretation of the statute has persisted for more than thirty-five years, ever since in 1975 the FTC promulgated Rule 703 shortly after the enactment of the MMWA. In 1999, the FTC published a regulatory review statement reaffirming its interpretation of the MMWA to preclude pre-dispute mandatory binding arbitration agreements. Although we summarized the FTC's 1999 statement briefly above, it is worth quoting here at greater length:

> The Commission examined the legality and the merits of mandatory binding arbitration clauses in written consumer product warranties when it promulgated Rule 703 in 1975. Although several industry representatives at that time had recommended that the Rule allow warrantors to require consumers to submit to binding arbitration, the Commission rejected that view as being contrary to the Congressional intent.

> The Commission based this decision on its analysis of the plain language of the Warranty Act. Section 110(a)(3) of the Warranty Act provides that if a warrantor establishes an informal dispute settlement mechanism that complies with Rule 703 and incorporates that informal dispute settlement mechanism in its written consumer product warranty, then "(t)he consumer may not commence a civil action (other than a class action) . . . unless he initially resorts to such procedure." This language clearly implies that a mechanism's decision cannot be legally binding, because if it were, it would bar later court action. The House Report supports this interpretation by stating that "(a)n adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding." H.R. Rep. No. 93-1107 (1974), at 41.

. . . .

> [T]he Commission determined that "reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the Act." 40 FR 60168, 60211 (1975). The Commission believes that this interpretation continues to be correct. Therefore, the Commission has determined not to amend § 703.5(j) to allow for binding arbitration. Rule 703 will continue to prohibit warrantors from including binding arbitration clauses in their contracts with consumers that would require consumers to submit warranty disputes to binding arbitration.

64 FR 19700-01, 19708-09 (1999) (internal footnotes omitted). That a quarter century passed between the FTC's initial construction of the MMWA as barring pre-dispute mandatory binding arbitration and its most recent reaffirmation of that conclusion merits that consistent FTC construction of the statute strong deference. Moreover, that Rule and its concomitant construction of the MMWA by the agency charged with the statute's enforcement remains in effect to this day.

We reject the argument that the FTC's construction is unreasonable in light of the Supreme Court's repeated holdings that Congress established a "liberal federal policy favoring arbitration agreements" when in 1924 it enacted the Federal Arbitration Act ("FAA"), fifty-one years before adopting the Magnuson-Moss Warranty Act in 1975. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008); *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

**[6]** The FAA provides in pertinent part that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court held

in *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220 (1987), that the FAA's mandate to enforce arbitration agreements, "[l]ike any statutory directive, may be overridden by a contrary congressional command." *Id.* at 226.

The Fifth and Eleventh Circuits relied on *McMahon* to conclude that the MMWA does not overcome the FAA's presumption that courts should enforce arbitration agreements. *See Walton*, 298 F.3d at 478, 474; *Davis*, 305 F.3d at 1279, 1273. The Eleventh Circuit held that the agency's rule prohibiting pre-dispute mandatory binding arbitration was an impermissible construction of the statute, *Davis*, 305 F.3d at 1279, while a Fifth Circuit panel majority, over a vigorous dissent by then-Chief Judge King, *Walton*, 298 F.3d at 480-92 (King, C.J., dissenting), asserted that it need not even consider the reasonableness of the FTC rule, because Congress, through the FAA's pro-arbitration presumption enacted nearly a half-century before the MMWA, had "directly spoken to the precise question" whether a warrantor may mandate pre-dispute binding arbitration under the MMWA. *Id.* at 478 n.14.

We disagree with the conclusions reached by the Fifth and Eleventh Circuits for three reasons. First, as Chief Judge King noted in dissent, it is unprecedented to locate Congress's intent with respect to one statute by looking to "a prior, less specific statute." *Id.* at 483 (King, C.J., dissenting). Where the directives of two statutes create an apparent conflict, to identify congressional intent in one statute by reference to a previously enacted and more general statute would violate two basic principles of statutory interpretation: first, that later enacted statutes take priority over older ones, and second, that more specific statutes control more general ones. *See* William N. Eskridge, et al., *Legislation and Statutory Interpretation* 282-83 (2d ed. 2006) (italics omitted). Nor did the Supreme Court purport to settle the question in *McMahon*, twelve years after the MMWA's enactment; it stated only that the FAA established a rebuttable presumption in favor of arbitration that Congress could override in any later statute by adopting

"a contrary congressional command." 482 U.S. at 226. The Fifth Circuit erred in holding that the prior adoption of the FAA was in itself enough to find that Congress had in the later-enacted MMWA "directly spoken to the precise question" whether pre-dispute mandatory binding arbitration provisions are enforceable under the MMWA. *Id.* at 478 n.14.

[7] Second, as we explained above, the FTC reasonably construed the statute's language, legislative history, and underlying purpose in concluding that "reference within the written warranty to any binding, non-judicial remedy is prohibited by . . . the [Magnuson-Moss Warranty] Act." 40 Fed. Reg. 60167, 60211 (Dec. 31, 1975). With its 1999 regulatory review statement, the FTC again carefully considered its construction of the statute as prohibiting "any binding, non-judicial remedy," and concluded that "this interpretation continues to be correct." 64 Fed. Reg. 19700, 19708 (Apr. 22, 1999). It did so with full awareness that the Supreme Court had twelve years earlier in *McMahon* set forth a rebuttable presumption in favor of enforcing arbitration agreements. We agree with the FTC's longstanding interpretation of the statute, that it bars judicial enforcement of warranty provisions that mandate pre-dispute binding arbitration and that the MMWA evinces a "contrary congressional command" sufficient to override the FAA's presumption in favor of arbitration. *McMahon*, 482 U.S. at 226. More important, however, under *Chevron*, we are bound by it. *See* 467 U.S. at 842-44.

The third and final reason that the FAA's proarbitration presumption does not render unreasonable the FTC's interpretation of the MMWA as barring pre-dispute mandatory binding arbitration is that the 1975 Magnuson-Moss Warranty Act is different in four critical respects from every other federal statute that the Supreme Court has found does not rebut the FAA's pro-arbitration presumption, including the Sherman Antitrust Act of 1890,[3] the Securities Act of 1933,[4] and the

---

[3]*See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985) (holding that claims brought under 15 U.S.C.

Securities Exchange Act of 1934.[5] First, with respect to these other statutes, in none did an authorized agency construe the statute to bar pre-dispute mandatory binding arbitration. Second, only in the MWWA and in none of these other statutes did Congress say anything about informal, non-judicial remedies, and do so in a way that would bar binding procedures such as mandatory arbitration. *See* 15 U.S.C. § 2310(a)(2) (authorizing the FTC to "prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty").

Third, in the MMWA alone did Congress explicitly preserve, in addition to informal dispute settlement mechanisms, a consumer's right to press his claims under the statute in civil court. *See* 15 U.S.C. § 2310(a)(3)(C) (requiring a "consumer [to] resort to such [informal dispute settlement] procedure *before* pursuing any legal remedy" (emphasis added)); *id.* § 2310(a)(3)(C)(i) (no consumer may "commence a civil action . . . unless he *initially* resorts to such procedure (emphasis added)). Fourth, only the MMWA sought as its primary purpose to protect consumers by prohibiting vendors from imposing binding, non-judicial remedies. By contrast, the FAA's proarbitration policy, the Court made especially clear just last term, is intended to expedite disputes through efficient, dispute-specific procedures and not to advance the interests of consumers. *See AT&T Mobility v. Concepcion*,

---

§§ 1-7 are subject to binding arbitration pursuant to the FAA's proarbitration presumption).

[4]*See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 486-88 (1989) (holding that claims under 15 U.S.C. §§ 77a-77aa are subject to binding arbitration pursuant to the FAA's proarbitration presumption).

[5]*See McMahon*, 482 U.S. at 227-28 (holding that claims brought under 15 U.S.C. §§ 78aa; 78cc(a) are subject to binding arbitration); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (same for the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34).

563 U.S. __, __ (2011) (slip op., at 9) ("The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms *so as to facilitate streamlined proceedings*." (emphasis added)).

**[8]** In sum, having found that the statute on its face is ambiguous as to whether pre-dispute mandatory binding arbitration provisions are valid under the MMWA, we conclude that the FTC's construction that they are not is reasonable. We do so for the following reasons: (1) the FTC interpreted the statute consistent with its carefully reasoned understanding of the enacting Congress's intent, as evidenced by the statute's language and legislative history; (2) the FTC's construction advances the MMWA's purpose to protect consumers from predatory warrantors and to provide them with fair and informal pre-filing procedures that preserve their rights to enforce their claims for breach of warranty through civil litigation in the state or federal courts; and (3) the persistence of the FTC's rule that the MMWA bars pre-dispute mandatory binding arbitration — expressly reaffirmed more than a decade after the Supreme Court held that the FAA "mandates enforcement of agreements to arbitrate statutory claims" absent "contrary congressional command — requires that the courts afford the agency's construction particularly strong deference. Because we are required to defer to the reasonable construction of a statute by the agency that Congress has authorized to interpret it, we hold that the MMWA precludes enforcement of pre-dispute agreements such as Porsche's that require mandatory binding arbitration of consumer warranty claims.

In view of the conclusion we have reached above, we need not address Kolev's additional contentions that the arbitration clause was unconscionable under California law and that the district court abused its discretion by admitting and relying on the sales contract authenticated by a principal of the Dealer-

ship and by compelling arbitration of her claims against the Dealership while staying the action against Porsche.

**[9]** We hold that written warranty provisions that mandate pre-dispute binding arbitration are invalid under the MMWA and that the district court therefore erred in enforcing Porsche's warranty clause by compelling mandatory arbitration of Kolev's claims. Accordingly, we reverse and remand to the district court as to all breach of warranty claims.

**REVERSED AND REMANDED.**

---

N.R. SMITH, Circuit Judge, dissenting

In a departure from Supreme Court precedent, the prevailing view of our sister circuits, and applicable statutes, the majority opinion nullifies nearly every binding, non-judicial warranty dispute remedy adopted by private parties in this circuit. The majority reaches this conclusion by conflating "informal dispute settlement procedures" ("IDSMs" or "Mechanisms")[1] under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA")—a narrow class of warranty dispute resolution procedures—with *any* ADR remedy adopted in a private contract.

Here, we address whether FTC regulations (proscribing the use of binding arbitration by "*Mechanisms*") bar the use of a binding arbitration remedy to which Kolev and a Los Angeles Porsche dealership agreed. Neither party contends that the dealership's arbitration remedy is a Mechanism. Indeed, the

---

[1]The FTC refers to "informal dispute settlement procedures" authorized by the MMWA as "Informal Dispute Settlement Mechanisms" or simply "Mechanisms." *See* 16 C.F.R. § 703.1(e); Final Action Concerning Review of Interpretations of MMWA, 64 Fed. Reg. 19700, 19701 (Apr. 22, 1999).

arbitration remedy (chosen by the parties) is not, and has never purported to be, compliant with federal law regulating the creation and operation of Mechanisms. More importantly, the FTC acknowledges that private parties may agree to pursue "some avenue of redress *other than* the Mechanism if they feel it is more appropriate," including "binding arbitration." Promulgation of Rule, 40 Fed. Reg. 60,190, 60,210 (Dec. 31, 1975) (emphasis added). Yet, the majority concludes that the FTC's ban on Mechanisms' use of binding arbitration must apply to all warranty dispute remedies. This view finds no support in the text of the statute, administrative rules, FTC opinions, or judicial authority on the subject.

Additionally, even if FTC regulations were applicable and could be read to prohibit binding arbitration of any warranty dispute arising under the MMWA, this view would be unreasonable in light of the presumption of arbitrability created by the Federal Arbitration Act. *See Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 475-78 (5th Cir. 2002); *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1272-77, 1280 (11th Cir. 2002).

## A. FTC regulations regarding "IDSMs" under the MMWA do not apply to the binding arbitration remedy in this case

### 1. The FTC's regulatory authority under the MMWA

The MMWA authorizes warrantors to create "informal dispute settlement procedures" called Mechanisms. Such Mechanisms are unique ADR procedures that prevent consumers from pursuing warranty claims in court without first exhausting the warrantor's Mechanism procedures. 15 U.S.C. § 2310(a). Recognizing Mechanisms and their "potential benefits as an alternative to the judicial process," Congress made such exhaustion a prerequisite to filing suit to "encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled." Action Interpreting

the MMWA, 64 Fed. Reg. 19700, 19701 (Apr. 22, 1999). Congress charged the FTC with exclusive authority to "pre-scribe rules setting forth minimum requirements for any [IDSM]," monitor compliance with IDSM regulations, inves-tigate complaints, and take remedial measures against non-compliant IDSMs. *Id.* § 2310(a)(2), (4). Pursuant to this authority, the FTC promulgated Rule 703. Rule 703 provides the minimum requirements for IDSMs authorized under the MMWA. *See* Informal Dispute Settlement Procedures, 16 C.F.R. § 703 *et seq.* To qualify as an IDSM, a program must (1) be established by a warrantor, (2) comply with rules set forth by the FTC, and (3) be incorporated into a written war-ranty agreement as a prerequisite to litigation. 15 U.S.C. § 2310(a)(3).

The FTC has also indicated that use of binding arbitration *by IDSMs* is prohibited by the MMWA and Rule 703, because "[d]ecisions of the Mechanism shall not be legally binding on any person." *Id.* § 703.5(j). Addressing renewed requests that warrantors be permitted to use binding arbitration as an MMWA-approved Mechanism, the FTC explained:

> The Rule does not allow this for two reasons. First, . . . Congressional intent was that decisions of Sec-tion 110 Mechanisms not be legally binding. Second, even if binding Mechanisms were contemplated by Section 110 of the Act, the Commission is not pre-pared, at this point in time, to develop guidelines for a system in which consumers would commit them-selves, at the time of product purchase, to resolve any difficulties in a binding, but non-judicial pro-ceeding.

40 Fed. Reg. 60167, 60210 (Dec. 31, 1975).

### 2. The dealership's arbitration remedy is not an IDSM

It is clear from the record and the pleadings that the binding arbitration remedy, to which the parties agreed in this case, is

not an IDSM. The majority's notion that the arbitration remedy is an IDSM is made out of whole cloth. Indeed, neither party alleges (and there is no indication in the record) that the arbitration remedy complies (or has ever attempted to comply) with the FTC's extensive regulations for IDSMs in Rule 703. *See* 15 U.S.C. § 2310(a)(3)(B). To be sure, the arbitration remedy fits none of the statutory or regulatory requirements for an IDSM. For example, the dealership does not describe the arbitration remedy as something that must be exhausted "before" pursuing litigation. *See id.* § 2310(a)(3)(C). The Agreement provides that (1) disputes will "be resolved by neutral, binding arbitration and *not by a court action*;" (2) "[t]he arbitrator's award shall be final and binding on all parties;" and (3) any appeal, if permitted by the terms of the agreement, will be to a three-arbitrator panel, *not to a court of law*." (emphasis added). Thus, instead of making arbitration a "prerequisite" to litigation (under § 2310(a)(3) of the MMWA), the agreement makes arbitration a binding *alternative* to litigation that operates completely outside the optional IDMS procedures available under the MMWA.

### 3.  Neither Congress nor the FTC prohibits the use of binding, non-judicial remedies as an alternative to IDSMs

IDSMs authorized by the MMWA are only one of many alternative dispute resolution procedures available to private parties under federal law. In concluding that any binding, non-judicial dispute resolution program is a "Mechanism" under the MMWA, the majority adopts the errant reasoning of Chief Judge King in *Walton v. Rose Mobile Homes*, 298 F.3d 470, 481 (5th Cir. 2002) (King, J., dissenting). Writing in dissent, Chief Judge King concluded that no warrantor may use binding arbitration to settle warranty disputes, because the FTC prohibits the use of binding arbitration by Mechanisms. *Id.* This view conflates the word "Mechanism" with "all non-judicial dispute resolution procedures, including arbitration."

*Id.* As explained above, this is a misreading of the statute and applicable FTC regulations.

"Mechanism" is a legal term adopted by the FTC that refers narrowly to IDSMs authorized by the MMWA. *See* 16 C.F.R. § 703.1(e) ("Mechanism means an informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of Title I of the Act applies, as provided in Section 110[2] of the Act."); 64 Fed. Reg. 19700, 19701 (Apr. 22, 1999). Although "Mechanisms" are ADR procedures, not all ADR procedures are "Mechanisms." The FTC itself acknowledges that there are non-judicial ADR remedies that fall outside the "Mechanism" procedures authorized by the MMWA:

> Rule [703] applies only to warrantors who 'give or offer to give a written warranty which incorporates an informal dispute settlement mechanism,' *but few warrantors incorporate an IDSM into their warranties*—i.e., few include a prior resort requirement in their warranties. Therefore, *there are few IDSMs that come within the ambit of [FTC regulations].*

64 Fed. Reg. at 19,707 (emphasis added).

Significantly, the FTC has addressed the specific question whether a "warrantor and the consumer [can] agree to use a[n ADR] remedy such as binding arbitration *instead of* proceeding to the Mechanism." 40 Fed. Reg. at 60,210 (emphasis added). It answered that "nothing in the Rule precludes the parties from agreeing to the use of some avenue of redress other than the Mechanism if they feel it is more appropriate." *Id.* If we truly must afford *Chevron* deference to the FTC's interpretation of the MMWA—as the majority concludes— the majority's determination that all ADR procedures are

---

[2]Section 110 is codified at 15 U.S.C. § 2310.

"Mechanisms" plainly contradicts the FTC's view of the statute.

**4. The FTC's disapproval of binding, non-judicial remedies in written warranties applies only to written warranties that incorporate IDSMs**

Proceeding with this errant assumption that all warranty-related ADR procedures are "Mechanisms," the majority holds that FTC regulations disfavoring the use of binding arbitration *by IDSMs* precludes the use of binding arbitration in any warranty dispute. However, read in context, the FTC's prohibition on binding arbitration clearly applies only to written warranties that adopt IDSMs.

The relevant sections of the 1975 and 1997 FTC actions (discussing binding arbitration) address the regulation of warranty agreements governed by Rule 703—i.e., warranty agreements creating IDSMs. The FTC indicates throughout both actions that binding *Mechanisms* are inconsistent with Congressional intent underlying 15 U.S.C. § 2310(a). *See, e.g.*, 40 Fed. Reg. at 60210 ("Congressional intent was that decisions of *Section 110 Mechanisms* not be legally binding." (emphasis added)); *id.* ("[E]ven if *binding Mechanisms* were contemplated *by Section 110 of the Act*, the Commission is not prepared . . . to develop guidelines for a system in which consumers would commit themselves, at the time of product purchase, to resolve any difficulties in a binding, but non-judicial proceeding." (emphasis added)). Similarly, formal rules adopted by the FTC that forbid binding, non-judicial remedies apply only to Mechanisms created pursuant to the MMWA. *See, e.g.*, 16 C.F.R. § 703.5(g)(1) ("The *Mechanism* shall inform the consumer that . . . [i]f he or she is dissatisfied with its decision . . . legal remedies . . . may be pursued." (emphasis added)); *id.* § 703.5(j) ("Decisions of the *Mechanism* shall not be legally binding on any person." (emphasis added)).

Thus, the FTC's disapproval of binding, non-judicial remedies in written consumer warranties is premised on the limitations of Rule 703 and 15 U.S.C. § 2310(a). *See* 40 Fed. Reg. at 60,211 ("[R]eference within the written warranty to any binding, non-judicial remedy is prohibited by the *Rule* and the *Act*."). But, as the FTC acknowledges, Rule 703 (entitled "Informal Dispute Settlement Procedures") applies "only to warrantors who 'give or offer to give a written warranty which incorporates an informal dispute settlement mechanism . . . .' " 64 Fed. Reg. at 19,707. Likewise, 15 U.S.C. § 2310(a), which authorized the FTC to promulgate Rule 703, only applies to a warrantor who establishes an IDSM.[3] Because the binding, non-judicial arbitration remedy, to which Kolev and the dealership agreed, is not an IDSM subject to regulation under § 2310(a), FTC regulations are irrelevant to the question at hand. To be sure, as noted above, the FTC has explained that "nothing in [Rule 703] precludes the parties from agreeing to the use of some avenue of redress other than the Mechanism if they feel it is more appropriate," including "*binding arbitration*." 40 Fed. Reg. at 60,210. (emphasis added).

## B.   *Chevron* **deference is not appropriate in this case**

Even if the 1975 and 1995 FTC Actions are applicable here, this is not a case warranting judicial deference. There are at least two persuasive reasons why we should not defer to the FTC action statements and regulations on the question before us.

---

[3]15 U.S.C. § 2310(a) (entitled "Informal dispute settlement procedures; establishment; rules setting forth minimum requirements; effect of compliance by warrantor; review of informal procedures or implementation by Commission; application to existing informal procedures") speaks only to IDSMs. Neither § 2310(a) nor any other provision of the MMWA addresses remedies that warrantors and customers agree to pursue outside the IDSM process.

### 1. The FTC has no delegated authority regarding warranty-related ADR procedures outside the MMWA Mechanism

First, Congress has not delegated authority to the FTC to address warranty dispute remedies *outside* of MMWA-authorized Mechanisms. In *Chevron U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, the Supreme Court explained that courts should defer to an administrative agency's elucidation of statutory provisions when "Congress has explicitly [or implicitly] left a gap for the agency to fill." 467 U.S. 837, 843-44 (1984). The gap Congress left for the FTC in the MMWA was limited to "prescrib[ing] rules setting forth minimum requirements for any [IDSM]," monitoring compliance with these rules, and taking remedial action against non-compliant Mechanisms. *See* 15 U.S.C. § 2310(a). The MMWA says nothing about remedies outside optional Mechanisms, and nowhere does it imply the FTC should have authority to decide such issues.

Because Congress has not authorized the FTC to regulate non-judicial remedies outside the Mechanism regulatory scheme, the FTC's commentary (to the extent it is even relevant) is not due any judicial deference. *See United States v. Mead Corp.*, 533 U.S. 218, 229-32 (2001); *Adams Fruit Co., Inc. v. Barrett*, 494 U.S. 638, 649-50 (1990) ("Although agency determinations within the scope of delegated authority are entitled to deference, it is fundamental 'that an agency may not bootstrap itself into an area in which it has no jurisdiction.' ") (citation omitted); *cf. NLRB v. United Food and Commercial Workers Union*, 484 U.S. 112, 123 (1987) (explaining that *Chevron* deference to agency interpretations of statutes applies only to regulations "promulgated pursuant to congressional authority").

### 2. Congress granted the courts authority to decide enforcement issues under the MMWA

Additionally, "we need not defer to the [FTC]'s view of [remedies outside § 2310(a)], because Congress has expressly

established the Judiciary and not the [FTC] as the adjudicator of private rights of action arising under the statute." *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649 (1990). In *Adams Fruit*, the Court declined to accord *Chevron* deference to the Department of Labor in resolving statutory ambiguities surrounding the scope of the Seasonal Agricultural Worker Protection Act's (AWPA) judicially-enforceable remedy. *Id.* at 650. "Congress clearly envisioned, indeed expressly mandated, a role for the Department of Labor in administering the statute by requiring the Secretary to promulgate *standards* implementing [certain] AWPA[ ] . . . provisions." *Id.* However, Congress "established an enforcement scheme independent of the Executive and provided aggrieved farm workers with direct recourse to federal court when their rights under the statute are violated." *Id.* at 650. Thus, "[a]lthough agency determinations within the scope of delegated authority are entitled to deference," it would be "inappropriate to consult executive interpretations of [the statute] to resolve ambiguities surrounding the scope of AWPA's *judicially enforceable remedy*." *Id.* (emphasis added).

As with the Department of Labor in *Adams Fruit*, Congress clearly envisioned a role for the FTC in "administering the statute by requiring the [Commission] to promulgate standards implementing [the IDSM] provisions." *Id.*; *see also* 15 U.S.C. § 2310(a). However, Congress "established an enforcement scheme independent of the Executive and provided aggrieved [consumers] with direct recourse to [state or] federal court where their rights under the statute are violated." *Adams Fruit*, 494 U.S. at 600; *see also* § 2310(d).[4] Because "Congress has expressly established the Judiciary and not the [FTC] as the adjudicator of private rights of action arising under the statute," *Adams Fruit*, 494 U.S. at 649, the judiciary

---

[4]It is worth noting that, unlike many *Chevron* deference cases involving formal administrative adjudications, the FTC takes no part in deciding the substantive warranty claims of consumers arising under the statute.

owes no deference to the FTC's views on the legality of extra-judicial enforcement procedures such as binding arbitration.

**C. The Arbitration Act establishes a federal policy favoring rigorous enforcement of agreements to arbitrate warranty disputes**

Even if the FTC had authority to address this question, and FTC regulations could be construed to prohibit the use of binding arbitration by any warranty dispute resolution procedure, I agree with the Fifth and Eleventh Circuits—the only federal courts of appeals to consider this question—that such a view would be unreasonable in light of the presumption of arbitrability created by the Federal Arbitration Act. *See Walton*, 298 F.3d at 475-78; *Davis*, 305 F.3d at 1272-77, 1280; *see also In re American Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 490-92 (Tex. 2001). The Arbitration Act was "intended to reverse centuries of judicial hostility to arbitration agreements, by placing arbitration agreements upon the same footing as other contracts." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987) (internal quotation marks and alterations omitted) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510-11 (1974)). The Act provides, in relevant part, that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The Act also provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, § 3; and it authorizes a federal district court to issue an order compelling arbitration if there has been a 'failure, neglect, or refusal' to comply with the arbitration agreement, § 4." *McMahon*, 482 U.S. at 226.

The U.S. Supreme Court has repeatedly emphasized that the Arbitration Act "establishes a 'federal policy favoring arbitration,' requiring that 'we rigorously enforce agreements to arbitrate.' " *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) and *Dean Wit-*

*ter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). "This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights. . . . [W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals should inhibit enforcement of the Act in controversies based on statutes." *McMahon*, 482 U.S. at 226 (internal quotation marks omitted) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985)). "The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims." *Id.*

Nonetheless, "the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 226-27. If Congress intended to create an exception to the Arbitration Act, "such an intent 'will be deducible from [1] the statute's text or [2] legislative history, or [3] from an inherent conflict between arbitration and the statute's underlying purposes.' " *Id.* at 227 (quoting *Mitsubishi Motors*, 473 U.S. at 628) (alterations omitted).

Both *Walton* and *Davis* followed the Supreme Court's test in *McMahon* to determine whether the presumption of arbitrability established by the FAA should be overridden by contrary congressional command in the MMWA. *See Davis*, 305 F.3d at 1273; *Walton*, 298 F.3d at 475. "After a thorough review of the MMWA and the FAA, combined with the strong federal policy favoring arbitration," both courts held that "written warranty claims arising under the Magnuson-Moss Warranty Act may be subject to valid binding arbitration agreements." *Davis*, 305 F.3d at 1280; *see Walton*, 298 F.3d at 478 ("[T]he text, legislative history, and purpose of the MMWA do not evince a congressional intent to bar arbitration of MMWA written warranty claims."). Although Congress adopted the MMWA "to improve the adequacy of

information available to consumers [and] prevent deception, . . . [t]hese purposes are not in conflict with the FAA. In fact, the Supreme Court has repeatedly enforced arbitration of statutory claims where the underlying purpose of the statutes is to protect and inform consumers." *Davis*, 305 F.3d at 1276 (citations omitted). " '[E]ven claims arising under a statute designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute serves its function.' " *Id.* (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)). Indeed, in every case[5] raising a statutory right that does not explicitly preclude arbitration, the Supreme Court has enforced the presumption of arbitrability under the Arbitration Act.[6] *See Walton*, 298 F.3d at 474. Therefore, the majority's conclusion that the consumer-friendly policies underlying the MMWA imply congressional intent to exempt warranty claims from arbitration is in error.

---

[5]These include claims arising under the Truth in Lending Act, *Green Tree Fin.*, 531 U.S. at 88-92; the Securities Act of 1933, *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484-86 (1989); the Securities Exchange Act of 1934, *McMahon*, 482 U.S. at 238; the Sherman Act, *Mitsubishi Motors,* 473 U.S. at 628-40; and the Racketeer Influenced and Corrupt Organization Act, *McMahon*, 482 U.S. at 242.

[6]The majority argues that other FAA cases are inapposite, because this is the only case in which (1) "an authorized agency construed the statute to bar pre-dispute mandatory binding arbitration," (2) Congress created a non-binding, informal dispute remedy, (3) Congress preserved a consumer's right to press claims in civil court, and (4) the statute "sought as its primary purpose to protect consumers by prohibiting vendors from imposing binding, non-judicial remedies." Maj. Op. at 17804-05. All of these arguments hinge on the majority's errant conclusion that the MMWA prohibits private parties from agreeing to resolve warranty disputes in binding arbitration outside an MMWA-authorized Mechanism. As explained above, this view finds no support in the statute, and contradicts the FTC's opinions on the subject.

## D.    Conclusion

In sum, the MMWA does not prohibit private parties from agreeing to binding arbitration as a remedy to warranty disputes arising under the MMWA. The FTC acknowledges this flexibility in multiple administrative opinions. The FTC's ban on arbitration cannot reasonably be read to apply to anything other than an MMWA "Mechanism." Even if it could, this view would be incompatible with the clear federal policy favoring arbitration under the Arbitration Act. Therefore, I must respectfully dissent.